United States Courts
Southern District of Texas
FILED

JUL 0 6 2004

Michael N. Milby, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

TETRA APPLIED TECHNOLOGIES, L.P.  *          CIVIL ACTION
                                      *

VERSUS                         *          NO. H 04 -2576
                                       *

HENRY'S MARINE SERVICE, INC. and  *          JUDGE: _____
HENRY'S TOWING, INC.          *

## NOTICE OF REMOVAL

To the Judges of the United States District Court for the Southern District of Texas.

Henry's Marine Services, Inc. and Henry's Towing, Inc. are defendants in a civil action brought in the 11th Judicial District Court in Harris County, Texas, Harris County, entitled "Tetra Applied Technologies, L.P. vs. Henry's Marine Services, Inc. and Henry's Towing, Inc., both listed as foreign corporations, Defendants. A copy of the Summons and Complaint in that action is attached hereto and constitutes all process, pleadings and orders served on Defendants to date in such action, Case No. 2004-27244 on that court's docket.

The above described action was commenced by service of process consisting of said Summons and Complaint upon Defendants by service upon Henry's Marine Services, Inc. and Henry's Towing, Inc. on or about June 11, 2004.

The above described civil action of which this Court has original jurisdiction under the provisions of 28 U.S.C. §1332, is one which may be removed to this Court by the Defendants, pursuant to the provisions of 28 U.S.C. §§1441 and 1446, in that the Plaintiff was at the time this action was commenced, and still is, a citizen of the State of Delaware and that the Defendants were,

1

at the time this action was commenced, and still are, corporations incorporated under the laws of the State of Louisiana, with their principal places of business within said state, and neither Defendant has a principal office or place of business within the State of Texas, and the matter in controversy herein exceeds the sum of Seventy-five Thousand and No/100 ($75,000.00) Dollars, exclusive of interest and costs.

WHEREFORE, the Defendants pray that this cause proceed in this Court as an action properly removed thereto.

Respectfully submitted this _30th_ day of June, 2004.

By: _____
PAUL C. MINICLIER, T.A. (T.B.A. #24001361
DAVID A. BINEGAR, LA #26603
Law Office of Paul C. Miniclier
1305 Dublin Street
New Orleans, LA 70118
Telephone: (504) 864-1276
Fax: (504) 864-1278

Counsel for Defendants, Henry's Marine Service, Inc. and Henry's Towing, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record or agents by depositing same in the United States mail, postage pre-paid and properly addressed this _30th_ day of June, 2004.

_____

20142-024/notice of removal

2

# CITATION

2004-27244
CAUSE #

## THE STATE OF TEXAS

7/7916665

TETRA APPLIED TECHNOLOGIES, L.P.                            , Plaintiff

vs

HENRY'S MARINE SERVICE, INC.,                              , Defendant

AND HENRY'S TOWING, INC.,

TO: HENRY'S TOWING, INC.,
    BY SERVING BARRY P. HENRY, REGISTERED AGENT/PRESIDENT
    THROUGH THE SECRETARY OF STATE OF TEXAS  1019 BRAZOS ST., AUSTIN, TX  78701
    1025 Fig St.
    Morgan City LA 70380

Defendant, in the above styled and numbered cause:

**YOU HAVE BEEN SUED.** You may employ an attorney. If you or your attorney do
not file a written answer with the clerk who issued this citation by 10:00 A.M.
on the Monday next following the expiration of twenty days after you were
served this citation and petition, a default judgment may be taken against you.

Attached is a copy of the Original Petition; Exhibit(S)
of the PLAINTIFF in the above styled and numbered cause, which was filed
on May 26th, 2004 in the COURT of HARRIS County, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, on May 26th, 2004.

REQUESTED BY:                                    Charles Bacarisse
Jerry R. McKenney                                Harris County District Clerk
Legge, Farrow, Kimmitt & McGrath, L.             301 Fannin, Room 403,
6363 Woodway, Suite 400                          Houston, TX 77002
Houston, TX 77057
(713) 917-0888                                   BY _Veronica Bahrs_
State Bar Number# **13706125**                            Deputy Clerk
THIS DOCUMENT WAS NOT PREPARED BY THE DISTRICT CLERK                  6892436
WHOSE SIGNATURE AND SEAL APPEAR IN ACCORDANCE WITH
ART.17.027(e) TEXAS CIVIL AND REMEDIES CODE.

---

## OFFICER'S RETURN

Came to hand on the_____day of___ _____, 20____ at_____o'clock____.M., and executed at _____
_____City of_____State of_____Zip_____within the
County of_____on the_____day of_____,20_____, at_____o'clock ___.M., by delivering
to the within named_____
_____,each in person, a true copy of the Original Petition; Exhibit(S)
with the accompanying citation, having first attached such copy of such citation to such copy of pleading and endorsed
on such copy of citation the date of delivery. I am over eighteen years of age, not a party to or interested in the
outcome of the suit, and have been authorized by written order to serve this citation.

Before me, a notary public, on this day personally appeared    Authorized Person / Sheriff / Constable
the above named authorized person, known to me to be the person  _____
whose name is subscribed to the foregoing document and, being
by me first duly sworn, declared that the statements therein
contained are true and correct. Given under my hand and seal    By: _____
of office on this the _____day of_____, 20_____.         Printed Name of Server
                                                                I.D. #_____
_____                           Fee for Service:_____ _____
       NOTARY PUBLIC FOR THE STATE OF TEXAS

Not prepared by the District Clerk.
District Clerk only certifies to the fact the
case is on file in his office. The party and
the pleading named are a true and correct
reflection of the records on file in his office
under the above captioned cause number.

00094338

State Henry

P. 4

No. 2004-27244

| | | |
|---|---|---|
| TETRA APPLIED | ) | IN THE DISTRICT COURT |
| TECHNOLOGIES L.P. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | HARRIS COUNTY, TEXAS |
| | ) | |
| HENRY'S MARINE SERVICE, | ) | |
| INC. and HENRY'S TOWING, | ) | |
| INC. | ) | |
| Defendant. | ) | _11_ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

To the Honorable Judge of this Court:

Plaintiff, TETRA Applied Technologies L.P. (hereinafter "TETRA"), files this petition, complaining of Henry's Marine Service, Inc. and Henry's Towing, Inc. (collectively "Henry's"), and for cause of action respectfully shows:

### I.

### PARTIES

1.      Plaintiff TETRA Applied Technologies L.P. is a Delaware Limited Partnership, which is authorized to do business in Texas, with its principal place of business located at 25025 I-45 North, The Woodlands, Montgomery County, Texas, 77381.

2.      Defendant Henry's Marine Service, Inc. is a Louisiana corporation which at all times material hereto, is and was doing business in Texas in accordance with §17.042 of the Texas Civil Practice and Remedies Code. Henry's Marine Service, Inc., 8920 HWY 90 E., Morgan City, Louisiana 70380, is a nonresident as that term is defined

1

in Subchapter C of Chapter 17 of the Texas Civil Practice and Remedies Code and engages in business in Texas, but has not designated or maintained a resident agent for service of process in Texas. Therefore, service of process can be had on its registered agent in the State of Louisiana pursuant to the Texas Long-Arm Statute, Texas Civil Practice and Remedies Code §17.041, et. seq. by serving the Secretary of State of the State of Texas with duplicate copies of the process. Process or notice of this proceeding can be forwarded by the Secretary of State of Texas to the registered agent and President of the Corporation as follows: Barry P. Henry, 1025 Fig St., Morgan City, LA 70380. Upon completion of service, a certificate of service is requested.

3.      Defendant Henry's Towing, Inc. is a Louisiana corporation which at all times material hereto, is and was doing business in Texas in accordance with §17.042 of the Texas Civil Practice and Remedies Code. Henry's Towing, Inc., 8920 HWY 90 E., Morgan City, Louisiana 70380, is a nonresident as that term is defined in Subchapter C of Chapter 17 of the Texas Civil Practice and Remedies Code and engages in business in Texas, but has not designated or maintained a resident agent for service of process in Texas. Therefore, service of process can be had on its registered agent in the State of Louisiana pursuant to the Texas Long-Arm Statute, Texas Civil Practice and Remedies Code § 17.041, et. seq. by serving the Secretary of State of the State of Texas with duplicate copies of the process. Process or notice of this proceeding can be forwarded by the Secretary of State of Texas to the registered agent and President of the corporation as follows: Barry Henry, 1025 Fig St., Morgan City, LA 70380. Upon completion of service, a certificate of service is requested.

## II.

## JURISDICTION

4.      The Court has jurisdiction over the nonresident Defendants because they have purposefully availed themselves of the privileges and benefits of conducting business in Texas by engaging in business in Texas including but not limited to contracting with a Texas resident to perform services and receive payment for same, which contracts were formed in whole or in part in Texas, were executed in whole or in part in Texas, were to be performed in whole or in part in Texas, and one of which contains a forum selection clause specifying Harris County, Texas as the forum in which disputes are to be resolved. *See* TEX. CIV. PRAC. & REM. CODE § 17.042(1). Further, Defendants have breached one or more contracts which impact this Plaintiff in the State of Texas. *See* TEX. CIV. PRAC. & REM. CODE § 17.042. Accordingly, Defendants have established the minimum contacts necessary for personal jurisdiction to be maintained in this Court which comports with the Constitutional requirements of fair play and substantial justice.

## III.

## DISCOVERY CONTROL PLAN

5.      Plaintiff intends to conduct discovery under Level 3 of Texas Rule of Civil Procedure 190.I.

## IV.

## COUNT I

## DECLARATORY JUDGMENT

6. On August 13, 2002, TETRA entered into a Time Charter Agreement with Henry's to charter vessels from time to time at varying rates agreed to in the Master Time Charter Agreement, attached as **Exhibit A** and incorporated by reference. The terms and conditions of the Charter Agreement govern this cause of action.

7. Article 1 of the 2002 Charter Agreement, states, TETRA

"...may from time to time request availability and delivery information of specific vessels.... When in need of a vessel, [TETRA] shall contact [Henry's Entities] regarding the provision of a specific vessel or a suitable vessel. Upon such request for availability by [TETRA], [Henry's Entities] shall provide the specific vessel or a suitable vessel, as requested by or as otherwise acceptable to [TETRA] for the vessels listed in attached Exhibit A ("Primary Vessels"). If no suitable Primary Vessel is available, [Henry's Entities] shall offer to provide a substitute vessel suitable for use by [TETRA] ("Substitute Vessel"). ...[TETRA] is under no obligation to utilize [Henry's Entities] if a requested Primary Vessel or an acceptable Substitute Vessel is unavailable in accordance with this Agreement at the time of [TETRA's] request. ... In the event that a suitable Primary Vessel or Substitute Vessel is available and delivery thereof is acceptable to [TETRA], it will issue a written order in substantially the form of Exhibit B attached hereto (the "Charter"). ...and upon notice of the provision of a suitable Primary Vessel or Substitute Vessel by [Henry's Entities], TETRA is obligated to charter such Primary Vessel or Substitute Vessel pursuant to the terms, conditions and rates set forth in this Agreement.

8. Pursuant to the Charter Agreement, TETRA chartered certain vessels listed in Exhibit A of the Charter Agreement. From time to time, TETRA also chartered vessels of a different type, kind or purpose from third parties.

9. A dispute has arisen between TETRA and Henry's concerning whether TETRA was obligated to charter vessels of a type, kind or purpose not listed in Exhibit A of the Charter Agreement from Henry's.

10. TETRA asserts that the lift boats, crew boats and tug boats chartered by TETRA from third parties outside of the 2002 Charter Agreement were not vessels of a type or for a purpose of those included in Exhibit A of the Charter Agreement. TETRA further alleges that is was not obligated to charter said lift boats, crew boats and tug boats from Henry's because they were not vessels of a type or for a purpose of those included in Exhibit A of the Charter Agreement. HENRY's claims TETRA was obligated to charter said lift boats, crew boats and tug boats from HENRY's.

11. The demands and contentions asserted by Henry's, as outlined above, have created uncertainty as to the liabilities and relationships of the parties in reference to the matters set out above. Such uncertainty should be formally resolved by this Court, after a full hearing on the matter, by the entry of a declaratory judgment pursuant to the provisions of Texas Civil Practice and Remedies Code Section 37.001 et seq.

12. The Plaintiff has retained the firm Legge, Farrow, Kimmitt, McGrath & Brown, LLP to represent Plaintiff in this action and has agreed to pay the firm reasonable and necessary attorney's fees. An award of reasonable and necessary attorney's fees to the Plaintiff would be equitable and just and therefore authorized by Section 37.009 of the Civil Practice and Remedies Code.

<u>Prayer for Relief</u>

Therefore, plaintiff respectfully requests the following relief:

a. The above Defendants be cited to appear and answer;

b.      On hearing, this court render a declaratory judgment declaring that TETRA was not obligated to charter lift boats, crew boats and/or tug boats from Henry's which were of a different type, kind or purpose than those listed in Exhibit A of the Charter Agreement.

c.      Attorneys Fees

d.      Plaintiff be granted such other and further relief to which it may be entitled.

## V.

## COUNT II

### BREACH OF CONTRACT

13.     On August 13, 2002, TETRA entered into a Time Charter Agreement with Henry's to charter vessels from time to time at varying rates agreed to in the Master Time Charter Agreement, attached as **Exhibit A** and incorporated by reference.  The terms and conditions of the Charter Agreement govern this cause of action.

14.     Under Article 11 of the 2002 Charter Agreement, Henry's Entities agreed to provide the following insurance coverage:

a.      Hull insurance on an American Institute Hull Form or Tug Form or equivalent;

b.      Protection and Indemnity insurance;

c.      Comprehensive General Liability insurance including contractual indemnity coverage, endorsed to cover maritime operations.

15.     Upon information and belief, Henry's obtained the required insurance.

6

16.     Upon information and belief, the Underwriters providing the above insurance cancelled these policies due to the Henry's failure to pay premiums. The effective date of cancellation was April 8, 2004.

17.     Henry's failure to maintain the above insurance is a breach of the 2002 Charter Agreement.

18.     As a result of the breach by defendant, plaintiff has suffered damages in an amount within the jurisdictional limits of this court.

19.     All conditions precedent under the contract between the parties have been performed.

20.     The Plaintiff has retained the firm Legge, Farrow, Kimmitt, McGrath & Brown, LLP to represent Plaintiff in this action and has agreed to pay the firm reasonable and necessary attorney's fees.

## Prayer for Relief

Therefore, plaintiff respectfully requests that Defendants be cited to appear and answer, and that on final trial plaintiff have:

a.     Judgment against defendant in an amount within the jurisdictional limits of this court;

b.     Reasonable attorney's fees and costs of suit pursuant to Sections 38.001 et seq. of the Texas Civil Practice and Remedies Code;

7

c.      Any other relief, at law or in equity, that the court deems proper.

Respectfully submitted,

LEGGE, FARROW, KIMMITT, MCGRATH & BROWN L.L.P.

**Glenn K. Legge**
TBA No. 12171330
**Jerry R. McKenney**
TBA No. 13706125
**Robert D. Tracy**
TBA No. 24042787
6363 Woodway, Suite 400
Houston, Texas  77057
(713) 917-0888  Telephone
(713) 953-9470  Telefax
**ATTORNEYS FOR PLAINTIFF
TETRA APPLIED TECHNOLOGIES L.P.**



PLAINTIFF'S
EXHIBIT
A

## Master Time Charter Agreement
## TETRA Applied Technologies L.P.

This Master Time Charter Agreement (the "Agreement") is made and entered into on this 13th day of August, 2002, between Henry's Marine Service, Inc. and Henry's Towing, Inc. located at P.O. Box 1915, Morgan City, Louisiana 70381 (collectively the "OWNER"), and TETRA Applied Technologies, L.P. located at 25025 I-45 North, The Woodlands 77381, (the "CHARTERER").

### WITNESSETH:

CHARTERER, from time-to-time, may desire to time charter vessels from OWNER and OWNER agrees to time charter vessels subject to the following terms and conditions.

1.    Formation and Duration of Charter. CHARTERER may from time to time request availability and delivery information of specific vessels by telephone or in writing. When in need of a vessel, CHARTERER shall contact OWNER regarding the provision of a specific vessel or a suitable vessel. Upon such request for availability by CHARTERER, OWNER shall provide the specific or a suitable vessel, as requested by or as otherwise acceptable to CHARTERER, from the vessels listed in attached Exhibit A ("Primary Vessels"). If no suitable Primary Vessel is available, OWNER shall offer to provide a substitute vessel suitable for use by CHARTERER ("Substitute Vessel"). OWNER shall notify CHARTERER immediately if OWNER is unable to provide either a Primary Vessel or a Substitute Vessel. CHARTERER is under no obligation to utilize OWNER's services if a requested Primary Vessel or an acceptable Substitute Vessel is unavailable in accordance with this Agreement at the time of CHARTERER's request. In the event a suitable Primary Vessel or Substitute Vessel is available and delivery thereof is acceptable to CHARTERER, it will issue a written order in substantially the form of Exhibit B attached hereto (the "Charter"). Once OWNER receives the written order from CHARTERER, OWNER is obligated to provide such Primary Vessel or Substitute Vessel pursuant to the terms, conditions and rates set forth in this Agreement, and upon notice of the provision of a suitable Primary Vessel or Substitute Vessel by OWNER, CHARTERER is obligated to charter such Primary Vessel or Substitute Vessel pursuant to the terms, conditions and rates set forth in this Agreement.

The initial term of this Agreement shall commence when fully executed by both parties and, unless sooner terminated in accordance with the terms and conditions of this Agreement, will expire without notice after a period of five (5) years. CHARTERER shall, at its option, have the right to renew this Agreement for three (3) consecutive one (1) year periods following the initial term, so long as it gives written notice to OWNER by or before thirty (30) days prior to the termination of the initial period or any subsequent renewal period. Provided, however, that any unexpired Charters shall continue in effect subject to the terms and conditions hereof until expiration of the term specified in such Charter.

The term of any Charter shall begin upon delivery of said vessel by OWNER to CHARTERER at the location and at the time specified in the Charter and continue for the term(s) specified in the applicable Charter, unless terminated by CHARTERER upon two (2) days prior written notice to OWNER

2.    Rates. Exhibit A attached hereto sets forth the day rates with respect to any Primary Vessels chartered pursuant to this Agreement. Upon the one-year anniversary of the execution of this Agreement and each subsequent year thereafter, each of the rates set forth in Exhibit A may be increased to an amount equal to the lesser of (i) the prevailing market rates for vessels of comparable size and capability, as determined by the parties in good faith, or (ii) one hundred and two percent (102%) of the previously scheduled rate. Following

any such rate adjustment, the parties shall initial and attach to this Agreement a modified <u>Exhibit A</u> reflecting such modified rates.

In the event OWNER supplies a Substitute Vessel, the rate shall be (i) the prevailing market rate for a vessel of comparable size and capability as the requested Primary Vessel, in the event such Substitute Vessel is required due to CHARTERER's use of all suitable Primary Vessels, or (ii) the lesser of, the rate for a comparable Primary Vessel set forth on attached <u>Exhibit A</u> or the prevailing market rate for a vessel of comparable size and capability as the requested Primary Vessel, when a Substitute Vessel is required as a result of any suitable Primary Vessel being subject to charter by OWNER to a third party.

3.       <u>Charter Documents</u>. This Agreement, together with any Charter dated subsequent to the date hereof, shall govern the respective rights and duties of OWNER and CHARTERER. In the event of any conflicts between this Agreement and any Charter, this Agreement shall control.

4.       <u>Delivery, Re-delivery, Substitution and Vessel Condition</u>. Each vessel shall be delivered to CHARTERER at the time and place specified in the applicable Charter. Time is of the essence for such delivery. OWNER shall deliver, operate and maintain such vessel in good running order and in a seaworthy condition. The vessel shall have valid documentation as required by the American Bureau of Shipping and/or United States Coast Guard, as applicable. If the parties mutually agree, each vessel shall be surveyed before delivery and upon re-delivery. Expenses of said surveys shall be divided equally between CHARTERER and OWNER or as agreed to by the parties in the applicable Charter.

OWNER may, at any time with the prior written consent of CHARTERER, substitute a suitable replacement vessel, provided such substituted vessel is acceptable to CHARTERER as to equipment, time and location and may be subject to surveys as noted in the preceding paragraph.

Re-delivery at the port or place specified in the applicable Charter may be postponed for the duration of any voyage or operation in progress at the expiration of the Charter term and for any additional period reasonably necessary to effect re-delivery. CHARTERER shall pay the time charter hire, at the applicable Charter rate, for the entire period that re-delivery is postponed or delayed.

OWNER shall be responsible for the cost of provisioning all vessels chartered hereunder with appropriate lubricant levels and full fuel tanks at the time of delivery to CHARTERER. CHARTERER shall be responsible for the cost of all fuel and lubricants consumed on board the vessel during the Charter and for returning the vessel to OWNER at the end of the Charter with appropriate lubricant levels and full fuel tanks.

5.       <u>Invoicing and Payment</u>. OWNER shall bill CHARTERER at the end of each calendar month for the time charter and services provided pursuant to each Charter at the address specified in Article 18 or such other address as CHARTERER may from time-to-time designate in writing. Payment shall be made in U.S. Dollars to OWNER or its assigns, at either the address specified in Article 18 or such other place as OWNER may designate in writing, with such payment being made within forty-five (45) days from receipt of the invoice.

In the event of a dispute of part or all of an invoice, the undisputed portion of an invoice shall be paid. The disputed portion shall remain unpaid pending the resolution of the dispute. If any vessel is lost, payment shall be made up to and including the earlier of the actual date of loss or the constructive date of loss or the date such vessel was last heard from.

6.       <u>Use of Vessel</u>. CHARTERER agrees to restrict the use of each vessel to the lawful movement of its supplies, equipment and other materials and personnel incidental to its operations in the inland and offshore waters of the United States of America, unless otherwise provided in the applicable Charter, and in waters

where the vessel can be navigated. The whole of the vessel shall be at CHARTERER's disposal reserving proper and sufficient space for the vessel's master, officers, crew, tackle, apparel, furniture, equipment, stores and fuel.

The Owner's master of each vessel shall determine whether operations required by the CHARTERER can safely be undertaken and whether his vessel is capable of undertaking or being employed to carry out the directions and orders of the CHARTERER. The master shall not unreasonably refuse any request to undertake operations or carry out any order or direction provided by CHARTERER. From time-to-time, CHARTERER shall furnish the master of the vessel with all requisite instructions and sailing directions and the master shall keep full and correct logs of the voyages and these shall be made available within a reasonable time upon the request of CHARTERER. CHARTERER is not responsible for any inspections of the vessels, appurtenances or crew to determine whether the vessels, appurtenances and/or crew are reasonably fit for their intended use or meet any statutory, administrative or regulatory requirements.

Notwithstanding the preceding paragraph, OWNER and CHARTERER agree that the master, crew and any other representatives, employees or agents of the OWNER are subject to the control and direction of CHARTERER merely as to the result to be accomplished by the work or task requested by CHARTERER and not as to the means and methods for accomplishing the result.

7.      Non-Crewmember Subsistence. Food and bunking facilities, if any, for any personnel other than crewmembers, shall be provided by OWNER subject to reimbursement by CHARTERER, at the rate specified in the Charter.

8.      Master and Crew. OWNER shall provide and pay for the master and crew of each vessel. OWNER, OWNER's employees, representatives, contractors, subcontractors and agents are independent contractors for all purposes, and OWNER will be responsible for its own withholding taxes, F.I.C.A., workmen's compensation, liabilities and all other matters related to its work and the performance under any Charter pursuant to this Agreement.

The master shall prosecute the voyage with dispatch and shall render all reasonable assistance with the vessel's crew and equipment. The duties of the crew provided by OWNER shall be limited to the maintenance and navigation of the vessel and the loading and discharging supplies or liquid cargoes.

If the CHARTERER shall be dissatisfied with the conduct of the master or officers, the OWNER shall, on receiving particulars of the complaint, investigate and, if necessary, make a change in the appointment or practices required to obtain the services contracted for herein.

9.      Additional Equipment. CHARTERER may install additional equipment aboard each vessel that is reasonably necessary for its operations, provided that CHARTERER shall obtain the written consent of OWNER before making any major structural changes or modifications and provided that said installation shall be approved by the American Bureau of Shipping and/or the United States Coast Guard, as applicable. All equipment installed by CHARTERER shall remain its property and shall be removed prior to re-delivery, and each vessel shall be restored to the same good order and conditions as it was prior to the installation of equipment or structural change, ordinary wear and tear excepted, all at CHARTERER's expense. The vessel shall remain on-hire at the rate set forth in article 2 hereof during any period of said installation, removal and/or modification.

10.     CHARTERER to Provide. Unless otherwise agreed in the applicable Charter, CHARTERER agrees to and shall provide and/or pay for:

a.    necessary dunnage, uprights and shoring equipment for securing deck cargo ,fuel, oil, and lubricants, fresh water, cordage, replacement bulk and cargo hoses provided that CHARTERER at his option may direct OWNER to procure any or all of the above, subject to reimbursement by CHARTERER for the direct costs thereof; and

b.    all permits, clearance expenses, customs fees and duties (imports or otherwise), pilotage fees, wharfage, port charges, canal fees, dockage, safe berths, watchmen, fumigation, extermination (when applicable during international work scopes), cleaning of cargo tanks that are used by CHARTERER, disposal of waste oil generated by CHARTERER, and all costs incident to any of the above and taxes, imposed by any nation in which the vessel is required to work, agency fees and commissions incurred in connection with the assessment, levy or payment of any of the above, unless incurred by reason of delay or fault on the part of OWNER but excluding income taxes imposed by the country of registry of the vessel, franchise taxes, and personal property taxes imposed by the home port taxing agency.

11.    A.  OWNER's Insurance. OWNER agrees at its sole cost and expense to procure and continuously maintain in full force and effect throughout the term of this Agreement and any Charter, with reliable insurance companies rated not less than "A", or equivalent, by A.M. Best and with deductibles satisfactory to CHARTERER, the following insurance coverage and minimum limits:

a.    Hull insurance (on a current American Institute Hull Form or Tug Form, as applicable, or equivalent Hull Form and on an Occurrence rather than a Claims Made basis) including coverage against the risks of Strikes, Riots, Civil Commotion and deliberate damage for an amount equal to the market value of the vessel including all supplies and equipment aboard. Deductible not to exceed $50,000 which is to be for the OWNER's account. Full Collision Liability subject to a total minimum limit of $1,000,000.  If vessel will engage in Towing, Towers Liability per the American Institute Tug Form Collision Tower's Liability Clause or equivalent. Collision/Towers Liability of not less than $1,000,000.  The hull insurance shall delete any language limiting coverage for CHARTERER in the event of the applicability of the Limitation of Liability statute. This insurance shall contain navigation limits adequate to cover all permitted use.

b.    Protection and Indemnity covering crew, employees of the OWNER, passengers, third parties, removal of wreck and/or debris and contractual liability containing a minimum limit of liability of $1,000,000.  P&I Deductible not to exceed $50,000 and shall be for the account of OWNER. This insurance shall contain navigation limits adequate to cover all permitted use.

c.    Comprehensive General Liability or Commercial General Liability Insurance (or equivalent coverage on an occurrence, not claims made, basis), including Contractual Liability and suitably endorsed to cover maritime operations, and with non-owned watercraft exclusion deleted, with a pollution liability endorsement, and with minimum limits of $1,000,000 for death, injury and property damage per injury/per occurrence, $2,000,000 General Aggregate.  Deductible not to exceed $50,000 and shall be for the account of OWNER.

d.    Vessel owners and/or operators are to be in compliance with the Water Quality Improvement Act Amendments of 1972 (Public Law 92-500) and Amendments thereto as required B Statutory Pollution.

e.    Umbrella/Excess Liability excess of all liability coverage in a, b, c, and d above, and f below in effect for OWNER with a minimum limit of $10,000,000.

f.      Workman's Compensation and Employer's Liability Insurance which shall fully comply with all applicable laws, state and federal.  Such policy shall contain the following endorsements covering:

(1)     United States Longshoremen's and Harbor Workers Compensation Act suitably endorsed for operations on the Outer Continental Shelf.

(2)     Employer's Liability covering marine operations with minimum limits of liability of $1,000,000 for deaths or injuries arising out of one occurrence.

(3)     Maritime Coverage B (or equivalent coverage) for all of the above coverages, including transportation, wages, maintenance and cure, covering liability under the Longshoremen's and Harbor Worker's Compensation Act, the Jones Act, the Outer-Continental Shelf Lands Act, the Death on the High Seas Act, the General Maritime Law and specifically including for claims of masters and members of crews of vessels and claims 33 U.S.G.A. 905(b) against any vessel.

OWNER's Insurance outlined in a, b, c, d, and e above of this Article 11(A) shall be endorsed to provide full coverage to CHARTERER GROUP (as defined in Article 12 below) as additional insureds with respect to the indemnity obligations assumed by OWNER under the terms of this Agreement.  Any language with respect to CHARTER GROUP purporting to limit coverage to liability of an insured "as owner of the vessel shall be deleted." OWNER shall obtain waivers of rights of subrogation against CHARTERER GROUP from all insurance companies providing OWNER's Insurance as set forth above.

OWNER shall secure and deliver insurance certificates in duplicate and full and complete copies of the insurance policies referenced in this Article 11(A) to CHARTERER evidencing that the foregoing insurance coverage is in full force and effect.  The certificates shall provide that CHARTERER shall receive not less than thirty (30) days prior written notice from underwriters of cancellation or material change in the coverage.  If OWNER fails to comply with the aforesaid insurance requirements, CHARTERER may, without prejudice to any other rights or remedies under this Agreement, purchase similar coverage and deduct the cost thereof from any payment due to OWNER under this Agreement.

As respects the insurance required to be provided by OWNER under this Agreement wherein CHARTERER GROUP are to be named additional insureds, OWNER's insurance shall be primary to any policies held by (or providing coverage to) CHARTERER GROUP and the coverage afforded CHARTERER GROUP under such policies shall delete any excess clause or co-insurance clause that requires sharing or contribution from any other insurance coverage covering CHARTERER GROUP or any self insured retention or account maintained on behalf of CHARTERER GROUP.  Whenever appropriate in CHARTERER's opinion, CHARTERER GROUP will pay the premium amount charged by OWNER's insurance carrier that relates to the coverage of CHARTERER GROUP as additional insureds under the applicable policy or policies of insurance provided by OWNER.

B.  CHARTERER's Insurance. CHARTERER agrees at its sole cost and expense to procure and continuously maintain in full force and effect throughout the term of this Agreement and any Charter, with reliable insurance companies rated not less than "A", or equivalent, by A.M. Best and with deductibles satisfactory to OWNER, the following insurance coverage and minimum limits:

a.      Comprehensive General Liability or Commercial General Liability Insurance (or equivalent coverage on an occurrence, not claims made, basis), including Contractual Liability and suitably endorsed to cover maritime operations, and with minimum limits of $1,000,000 for death, injury and.

property damage per injury/per occurrence, $2,000,000 General Aggregate. Deductible shall be for the account of CHARTERER.

b.      Umbrella/Excess Liability excess of all liability coverage in effect for CHARTERER with a minimum limit of $10,000,000.

c.      Workman's Compensation and Employer's Liability Insurance which shall fully comply with all applicable laws, state and federal.  Such policy shall contain the following endorsements covering:

(1)     United States Longshoremen's and Harbor Workers Compensation Act suitably endorsed for operations on the Outer Continental Shelf.

(2)     Employer's Liability covering marine operations with minimum limits of liability of $1,000,000 for deaths or injuries arising out of one occurrence.

(3)     Maritime Coverage B (or equivalent coverage) for all of the above coverages, including transportation, wages, maintenance and cure, covering liability under the Longshoremen's and Harbor Worker's Compensation Act, the Jones Act, the Outer-Continental Shelf Lands Act, the Death on the High Seas Act, the General Maritime Law and specifically including for claims of masters and members of crews of vessels and claims 33 U.S.G.A. 905(b) against any vessel.

CHARTERER's Insurance outlined in a and b of this Article 11(B) shall be endorsed to provide full coverage to OWNER GROUP (defined in Article 12 below) as additional insureds with respect to the indemnity obligations assumed by CHARTERER hereunder.  CHARTERER shall obtain waivers of rights of subrogation against OWNER GROUP from all insurance companies providing CHARTERER's Insurance as set forth above.

CHARTERER shall secure and deliver insurance certificates in duplicate and full and complete copies of the insurance policies referenced in this Article 11(B) to OWNER evidencing that the foregoing insurance coverage is in full force and effect.  The certificates shall provide that OWNER shall receive not less than thirty (30) days prior written notice from underwriters of cancellation or material change in the coverage.  If CHARTERER fails to comply with the aforesaid insurance requirements, OWNER may, without prejudice to any other rights or remedies under this Agreement, purchase similar coverage and deduct the cost thereof from any payment due to CHARTERER under this Agreement.

As respects the insurance required to be provided by CHARTERER under this Agreement wherein OWNER GROUP are to be included as additional insureds, CHARTERER's insurance shall be primary to any policies held by (or providing coverage to) OWNER GROUP and the coverage afforded OWNER GROUP under such policies shall delete any excess clause or co-insurance clause that requires sharing or contribution from any other insurance coverage covering OWNER GROUP or any self insured retention or account maintained on behalf of OWNER GROUP.  Whenever appropriate in OWNER's opinion, OWNER GROUP will pay the premium amount charged by CHARTERER's insurance carrier that relates to the coverage of OWNER GROUP as additional insureds under the applicable policy or policies of insurance provided by CHARTERER.

12.     Indemnities and Releases.    A.  IN ADDITION TO THE OBLIGATIONS SET FORTH IN PARAGRAPH B OF THIS ARTICLE 12, OWNER SHALL DEFEND, PROTECT, INDEMNIFY AND SAVE CHARTERER, ITS PARENTS, AFFILIATES, SUBSIDIARIES, PARTNERS, CHARTERER'S CUSTOMERS, AND THE DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, AND THE

UNDERWRITERS OF EACH OF THE FOREGOING (COLLECTIVELY, THE "CHARTERER GROUP") HARMLESS AGAINST ANY AND ALL CLAIMS, DEMANDS, CAUSES OF ACTION AND JUDGEMENTS OF EVERY KIND AND CHARACTER, INCLUDING COURT COSTS AND ATTORNEY'S FEES FOR ANY PERSONAL INJURIES TO OR DEATH OF ANY EMPLOYEE, SERVANT, SUBCONTRACTOR OR AGENT OF ANY OF CHARTERER GROUP OR ANY OF CHARTERER'S SUBCONTRACTORS (OTHER THAN OWNER) WHILE EMBARKED ON BOARD THE CHARTERED VESSEL AS A PASSENGER, OR LOSS OF OR DAMAGE TO CHARTERER GROUP'S PROPERTY WHILE IN TOW OF OR BEING CARRIED ON BOARD THE CHARTERED VESSEL, WHETHER SUCH LOSS, DAMAGE, INJURY, DEATH OR LIABILITY ARISES FROM OR IS CONTRIBUTED TO BY THE FAULT OR THE NEGLIGENCE, INCLUDING BUT NOT LIMITED TO THE SOLE FAULT OR NEGLIGENCE, CONCURRENT FAULT OR NEGLIGENCE OR STRICT LIABILITY OF CHARTERER GROUP OR THEIR EMPLOYEES, SERVANTS OR AGENTS OR THE UNSEAWORTHINESS OF ANY VESSEL.

B. NONE OF CHARTERER GROUP SHALL HAVE ANY RESPONSIBILITY OR LIABILITY FOR ANY CLAIM INVOLVING DAMAGE TO OR LOSS OF ANY VESSEL OR EQUIPMENT OF OWNER, OWNER'S PARENTS, AFFILIATES, SUBSIDIARIES, PARTNERS AND THE DIRECTORS, OFFICERS AND EMPLOYEES OF EACH, OWNER'S CUSTOMERS AND THE UNDERWRITERS OF EACH OF THE FOREGOING (COLLECTIVELY, THE "OWNER GROUP") OR OF ANY SUBCONTRACTOR OF OWNER PROVIDING VESSELS, OR FOR ANY INJURY, ILLNESS, DISEASE OR DEATH OF EMPLOYEES OF OWNER GROUP, OF SUBCONTRACTORS PROVIDING VESSELS OR OF THIRD PARTIES WHICH OCCUR, GROW OUT OF OR ARE INCIDENT TO THIS AGREEMENT, AND OWNER HEREBY RELEASES, RELINQUISHES, AND DISCHARGES, AND SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS EACH OF CHARTERER GROUP FROM AND AGAINST ANY SUCH CLAIM, WHETHER GROUNDLESS OR NOT, AND WHETHER CAUSED IN WHOLE OR IN PART BY THE JOINT, CONCURRENT, SOLE OR GROSS NEGLIGENCE OR FAULTS OF ANY OF CHARTERER GROUP, OR BY THE EQUIPMENT OR PROPERTY OF CHARTERER GROUP OR THE UNSEAWORTHINESS OF ANY VESSEL.

C. EXCEPT AS EXPRESSLY SET FORTH IN PARAGRAPH A OF THIS ARTICLE 12, NONE OF OWNER GROUP SHALL HAVE ANY RESPONSIBILITY OR LIABILITY FOR ANY CLAIM INVOLVING DAMAGE TO OR LOSS OF ANY VESSEL OR EQUIPMENT OF CHARTERER GROUP OR FOR ANY INJURY, ILLNESS, DISEASE OR DEATH OF THE EMPLOYEES OF CHARTERER GROUP WHICH OCCUR, GROW OUT OF OR ARE INCIDENT TO THIS AGREEMENT, AND CHARTERER HEREBY RELEASES, RELINQUISHES, AND DISCHARGES, AND SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS OWNER GROUP FROM AND AGAINST ANY SUCH CLAIM, WHETHER GROUNDLESS OR NOT, AND WHETHER CAUSED IN WHOLE OR IN PART BY THE JOINT, CONCURRENT, SOLE OR GROSS NEGLIGENCE OR FAULTS OF THE OWNER GROUP OR BY THE EQUIPMENT, PROPERTY OF OWNER GROUP OR THE UNSEAWORTHINESS OF ANY VESSEL.

D. OWNER AND CHARTERER agree to support their indemnity obligations in Article 12 with liability insurance up to a minimum of the insurance coverages required to be carried pursuant to Article 11 hereof. Neither the OWNER nor the CHARTERER shall be liable for any consequential damages incurred by the CHARTERER GROUP or the OWNER GROUP, respectively.

E. Either party shall have the right, at its option and at its own cost and expense, to participate in the defense of any claim, suit or action without relieving the other party of any obligation hereunder.

C:\DOCUME~ \....\LOCALS~ 1\Temp\...

13.   Payments of Hire.  Should the vessel, for any reasons not caused by CHARTERER, break down, become inoperative or unavailable to CHARTERER (which shall not be deemed to include periods where either the vessel is standing by awaiting instructions from CHARTERER, or repairs and maintenance can be and are performed without interfering with the operating requirements and/or continued movement of the vessel on behalf of CHARTERER) payment of hire shall cease from the time the vessel is unable to perform until the vessel is again in a thoroughly efficient state to resume her service.  OWNER is allowed that time specified in the applicable Charter for maintenance and repairs to the vessel but shall coordinate such activity with CHARTERER to least interfere with the operations of CHARTERER.

14.   Liens.  CHARTERER shall not create, incur or permit any liens to be imposed upon any vessel chartered under this Agreement, and CHARTERER agrees to indemnify and hold OWNER harmless from and against all such liens created and imposed on the vessel.  In the event OWNER shall create, incur or permit any liens to be imposed upon any vessel chartered under this Agreement, OWNER agrees to indemnify and hold CHARTERER harmless from and against all such liens (except such liens as might arise out of the obligations imposed herein after on CHARTERER).

It is further agreed by and between OWNER and CHARTERER, that CHARTERER does hereby subordinate any and all maritime liens which it has or may have which are based upon or arise out of the breach of this Agreement to any and all liens or mortgages (including, but not limited to, the First Preferred Ship's Mortgages) in favor of Whitney National Bank affecting any or all of the Primary Vessels.  It is the intent of the parties hereto that the rights of Whitney National Bank, as mortgagee of the Primary Vessels, shall at all times be superior to any lien rights of CHARTERER which may arise out of the breach of this Agreeement.

15.   Force Majeure.  Neither OWNER nor CHARTERER shall be liable to the other for any loss, damage or delay of whatsoever nature resulting from an act of God, enemy, strikes, labor disputes, hostilities, war, epidemic, quarantine, embargo, or for restraint of any government, ruler or people, or other causes beyond the reasonable control of the parties hereto.  It is understood and agreed that unusual or inclement weather preventing the operation of any vessel, while the vessel is otherwise available for service, shall not interrupt the vessel's charter hire.

16.   Failure to Perform.  If, at any time after delivery to CHARTERER, CHARTERER fails to perform any of its material duties or obligations imposed under this Agreement and any Charter, or if CHARTERER is dissolved or adjudged a bankrupt or has a petition in bankruptcy filed against it, or makes a general assignment for the benefit of creditors, or if a receiver is appointed for CHARTERER, OWNER may without prejudice to any other rights which it may have under this Agreement or any Charter or any and all rights allowed by law, admiralty or equity, withdraw and retake all vessels, wherever the same may be found and for that purpose may enter upon any dock, pier, or other premises where any vessel may be found and take possession thereof.  Any cargo aboard any vessels retrieved by OWNER shall remain the property of CHARTERER and shall be available to CHARTERER for use and/or removal at all reasonable times.

17.   Assignment.  Neither OWNER nor CHARTERER shall assign this Agreement without prior written consent of the other, which consent shall not be unreasonably withheld, provided that CHARTERER may assign its rights hereunder to its parent, affiliate or subsidiary and OWNER may assign its rights hereunder to its creditors without such consent.  However, no such assignment shall relieve the assigning party from any of its obligations hereunder.

18.   Nature of Charter.  Nothing herein contained shall be construed as creating a demise of the vessel to the CHARTERER, nor shall this Agreement be considered as or apply to the bareboat charter of any barge or other vessel from OWNER by CHARTERER.  If a bareboat charter is desired for any barge or other vessel, such will be covered by a separate agreement.

19.     <u>Notices</u>.  The address of the OWNER for sending notices under this Agreement is:

          Henry's Marine Service, Inc. and Henry's Towing, Inc.
          P.O. Box 1915
          Morgan City, LA 70381
          Attn: Barry P. Henry

The address of the CHARTERER for sending notices under this Agreement is:

          TETRA Applied GP, LLC.
          25025 I 45 North
          The Woodlands, Texas 77380
          Attn: Managing Director -- LEGAL NOTICE

      Any notices provided for herein, shall be in writing and sent by certified mail, return receipt requested, postage prepaid, or telex to the recipient at the address stated above.  Notices shall be deemed given when received by the addressee as evidenced by return receipt or transmission acknowledgement or receipt.  Any change of address shall be notified in writing at least thirty (30) days in advance to the other party.

20.     <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement among the parties with respect to the subject matter hereof and supercedes all prior agreements, except with respect to rights and remedies of parties relating to performance under such agreements prior to the date hereof.  The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties.

21.     <u>Law</u>.  The parties agree that the services hereunder are maritime in nature and that this Agreement shall be construed in accordance with the admiralty and maritime laws of the United States of America.  CHARTERER warrants that it is a United States citizen for the purposes of Section 2 of the U. S. Shipping Act.  If maritime law is held to be inapplicable, this Agreement shall be governed by the laws of the State of Texas.

22.     <u>Headings</u>.  The preceding headings are for identification purposes only and are not intended to delineate the obligations or rights of the parties to this Agreement.

23.     <u>Severability</u>.  The provisions of this Agreement are separable and severable.  If any provision, item or application of this Agreement shall be deemed invalid in whole or in part, such invalidity shall not affect other provisions, items or applications of this Agreement which can be given effect without the invalid provisions, items or application.

IN WITNESS WHEREOF, the parties hereto have caused this Master Agreement to be executed by their duly authorized representatives, in duplicate originals, as of the day and year first above written.

WITNESSES:

HENRY'S MARINE SERVICE, INC.

By: _____
Name: _BARRY P. HENRY_____
Title: _PRESIDENT_____

WITNESSES:

HENRY'S TOWING, INC.

By: _____
Name: _BARRY P. HENRY_____
Title: _PRESIDENT_____

TETRA APPLIED TECHNOLOGIES, L.P.

WITNESSES:

By:   TETRA APPLIED GP, LLC,
      Its general partner

By: _____
      GARY C. HANNA, PRESIDENT

State Henry

## EXHIBIT A

### DAY RATE COSTS TO TETRA

TUGS

| | |
|---|---|
| Carl T, 900 H.P. | $1700.00 per day |
| Bacchus, 900 H.P. | $1600.00 per day |
| Marrisa D, 600 H.P. | $1400.00 per day |
| Mackerel, 600 H.P. | $1400.00 per day |
| Mr. Troy, 400 H.P. | $1300.00 per day |

CREW BOATS

| | |
|---|---|
| Frankie Lea | $575.00 per day |
| J.P. XVI | $575.00 per day |
| J.P. XV | $575.00 per day |
| Shannon Lea | $575.00 per day |
| Pamela G | $575.00 per day |
| Betsy | $575.00 per day |
| Johnny | $575.00 per day |
| Marie | $575.00 per day |
| Betty | $575.00 per day |

EXHIBIT B

Charter

This Charter is entered into as of this ___ day of _____, 20_____, between Henry's Marine Service, Inc./Henry's Towing, Inc. ("OWNER"), owner of the vessel described below ("VESSEL") and TETRA Applied Technologies, L.P. ("CHARTERER").

Pursuant to the terms of that certain Master Time Charter Agreement dated June ___, 2002, between OWNER and CHARTERER, the premises and covenants of which the parties hereto are familiar with and incorporate herein by reference, OWNER agrees and does hereby time charter and CHARTERER agrees to and does hereby hire the Vessel subject to the following:

1.  CHARTERER shall restrict use of Vessel to: _____

2.  As used or specified herein, the following descriptions and rates shall be construed to be as set for hereinbelow:

    A.  Description of Vessel:
        Name: _____
        Official Number: _____
        Full Agreed Value of Vessel: _____
    B.  Term: _____
    C.  Date or Time of Delivery: _____
    D.  Port or Place of Delivery: _____
    E.  Port or Place of Registry: _____
    F.  Charter Hire Rates and Fees:
        Daily Charter Rate: _____
        Meal Fee B Per Meal: _____
        Bunking Fee B Per Bunk: _____
    G.  Mobilization Fee: _____
    H.  Demobilization Fee: _____

3.  Special Provisions numbered _____ through _____, annexed hereto on Annex A, shall be deemed incorporated herein and shall constitute additional terms and conditions of this Charter Agreement.

TETRA APPLIED TECHNOLOGIES, L.P.
By:    TETRA APPLIED GP, LLC,
      Its general partner              HENRY'S MARINE SERVICE, INC.

      By: _____      By: _____
      Name: _____      Name: _____
      Title: _____      Title: _____

                                      HENRY'S TOWING, INC.

                                      By: _____
                                        Name: _____
                                          Title: _____