| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |
|---|---|

TETRA APPLIED TECHNOLOGIES, L.P., §
　　　　　　　　　　　　　　　　§
　　　　　　　　Plaintiff,　　　　　§
　　　　　　　　　　　　　　　　§
*versus*　　　　　　　　　　　　　§　　　　CIVIL ACTION H-04-2576
　　　　　　　　　　　　　　　　§
HENRY'S MARINE SERVICE, INC., *et al.*, §
　　　　　　　　　　　　　　　　§
　　　　　　　　Defendants.　　　　§
　　　　　　　　　　　　　　　　§

# Opinion on Partial Summary Judgment

1.　*Introduction.*

　　A shipowner bought a fleet of service boats agreeing that, when the seller needed similar boats, it would charter them exclusively from the buyer for five years. The seller says that it was obliged to charter from the buyer only those boats that it sold and roughly similar ones – not all boats it needed.

2.　*Background.*

　　Tetra Applied Technologies, L.P., owned a fleet of workboats and decided to sell them. Henry's Marine Service, Inc., operated service boats for hire in the oil business. In August 2002, Tetra sold its boats to Henry for nearly two million dollars. For a period of five years after the sale, Tetra agreed that it would charter the boats it sold and substitutes of similar size and capability from Henry as it needed them. Henry says that part of the deal obliged Tetra to hire all boats from it during the five years. Tetra says that it was only bound to hire the sold boats and their substitutes.

3.　*Law.*

　　Both parties agree that maritime law governs the contract and that, if it does not apply, then Texas contract law applies. Whether maritime or Texas contract law applies, the question is of textual interpretation. Maritime and Texas law both reach the same

result. *Crossman v. Burrill*, 179 U.S. 100, 106-07 (1900); *Alamo Cas. Co. v. Richardson*, 235 S.W.2d 726, 730 (Tex. Civ. App. 1950).

4.    *Which Boats.*

The agreement says that Tetra must hire "primary vessels and substitute vessels of similar size and capability" from Henry. The key lies in "substitute." Substitution occurs when what is specified is not available. Tetra would read substitute to mean replacement boats. Henry reads substitute to mean all boats.

When Tetra needs one of the sold boats, it was obliged to hire them from Henry. If the boats listed in the agreement are unavailable, Tetra must hire a similar boats from Henry's fleet. It was not obliged to hire every boat it needed from Henry.

An ambiguity only exists when a reasonable, fully informed, disinterested person would be confused by the words in the context of the business. No confusion arises here: specific boats and rates are listed in the charter. At no point does Tetra commit itself to meet all of its requirements for vessels through Henry. Henry says that no matter what type of vessel and no matter where she would serve, Tetra had to go through it, allowing Henry to hire it from another owner and brokering it to Tetra.

5.    *Expansion.*

After the sale, Tetra hired other non-substitute, dissimilar boats from Henry under terms similar to those in the agreement from the sale. Henry asserts that this expanded the five-year obligation to include those other boats and their substitutes. It is wrong. Those transactions formed a separate, independent contract with mostly parallel terms. That a second or third charter adopts for ease the terms of an earlier rate sheet in a contract does not submit the charterer to whole burdens of the sale-use agreement. They are not additions to the earlier agreement.

By Henry's logic, it should have to pay Tetra for the expansion boats before chartering them too Tetra because that is what the original contract required.

6.    *Conclusion.*

Tetra was bound only by the words of the agreement that obliged it to hire

primary boats or their substitutes. Tetra did not expand the charter duty in the original contract by hiring extra boats from Henry. Tetra prevails.

Signed August 19, 2005, at Houston, Texas.

                                       Lynn N. Hughes
                                United States District Judge