UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| TETRA APPLIED TECHNOLOGIES, LP, | § § | |
| Plaintiff, | § § | |
| *versus* | § § | CIVIL ACTION H-04-2576 |
| HENRY'S MARINE SERVICE, *et al.*, | § § | |
| Defendants. | § § | |

# Findings of Fact and Conclusions of Law

1.  *Introduction.*

A oil-field service company sold its fleet of work boats to a shipowner with the agreement that the service company would charter those boats for five years. The buyer agreed to insure the boats and indemnify the seller in three lawsuits. When it learned that the insurance on the boats had been cancelled, the seller sued for breach of contract and a declaration of its obligations under the contract. The buyer counterclaimed. The seller prevails.

2.  *The Sale.*

Tetra Applied Technologies, L.P., owned a fleet of work boats. Henry's Marine Service, Inc., operated work boats for hire in the Gulf-Coast oil business. In August 2002, Tetra sold its boats to Henry for nearly two million dollars. Henry's Marine Services created Henry's Towing, Inc., to operate the boats that it bought from Tetra. These two companies are simply called Henry as both are liable under the contract.

Tetra agreed that, for a period of five years after the sale, when it needed them it would charter the boats it had sold and substitutes of similar size and capability. Henry interprets the deal to oblige Tetra to hire from Henry all boats that it needed during the five years. Tetra insists that it was bound only to hire the sold boats and their substitutes.

3. *The Events.*

As part of the sale, Henry agreed to insure the boats. Henry also agreed to indemnify Tetra for lawsuits stemming from operation of the boats, including three specific, existing suits brought by seamen for injuries from working on the boats. Tetra later paid the settlements of these lawsuits, but it was not reimbursed by Henry.

Henry originally bought the insurance required by the contract, but it was cancelled on April 8, 2004, for nonpayment of the premiums.

Tetra brought this suit in May of 2004, for (a) Henry's breach of contract for failure to maintain the insurance and (b) a declaratory judgment that it was not required to charter all boats from Henry. Later, Tetra discovered that Henry had collected the insurance proceeds for the three seamen, and it added that claim.

Henry and Tetra agreed to a trial to the court and conducted discovery for more than six months before Henry filed for bankruptcy, staying this case. On Tetra's motion, the bankruptcy court lifted the stay in July of 2006.

4. *Louisiana Judgment.*

In June of 2006, Henry recovered in Louisiana state court against one of its insurers for indemnification and defense costs for three seamen's lawsuits that Tetra had paid to settle. In securing this judgment, Henry represented to the Louisiana court that it was legally obliged to pay Tetra. Henry, however, did not tell Tetra of the judgment.

Once Tetra learned of the award, it amended its complaint here in late July 2006 to include that Henry had further breached the contract with Tetra by failing to pay the recovery to Tetra for those suits. Because this amendment deals with events that occurred after Tetra filed its original complaint, it was allowed as a supplemental pleading.[1]

---

[1]     FED. R. CIV. P. 15(d).

5. *Third Parties.*

On August 4, 2006, four days before trial, Henry answered the *original* complaint, counterclaimed, and made a third-party demand against Tetra Applied GP, LLC – the general partner of the plaintiff. The rules permit a defendant to file a third-party complaint without leave of court within ten days of filing its original answer. The original answer here, however, was filed two years late. The purpose of the rules is to secure prompt joinder of all claims. Henry's pleadings ran entirely contrary to this. Henry has known about the general partner since the case began. It cannot add a party four days before trial.

More important, a general partner of a limited partnership is jointly and severally liable for all obligations of the partnership. The claim, therefore, against Tetra Applied GP, LLC, would have no impact on liability to Henry. It is malicious surplusage. The third party claim is struck.


6. *Trial and Aftermath.*

At the trial, Tetra offered documentary evidence in support of its claims. Henry, on the other hand, offered neither documents nor witnesses in support of its defenses or counterclaims.

More than a month after the trial, Henry tried to amend its answer. The only difference from the original one is the addition of a defense that some of the issues in this matter are more properly before the bankruptcy court. The bankruptcy court lifted the stay for this action to proceed. All issues addressed here fall within the jurisdiction of this court.[2] The amended answer is late and without permission. The amended answer is not allowed, and if allowed, vacuous.


3. *Tetra's Claims.*

Henry and Tetra are disputing the meaning of three documents: (a) the sales agreement, (b) the charter party – both dated August 13, 2002 – and (c) a letter agreement dated August 22, 2002, about the three lawsuits for which Henry indemnifies

---

[2] *See Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir. 1986).

Tetra.

Separate instruments executed at the same time, for the same purpose, and in the course of the same transaction are one contract and are construed together.[3] The three documents were executed for the same purpose – to transfer ownership of the boats while ensuring that Tetra would still use them. The sales agreement and the charter party were executed in the same transaction at the same time. The letter agreement was executed nine days after the first two, and it expresses that it is an inducement for the sales agreement and is under the charter party. Consequently, these three documents are one contract.

Tetra and Henry also argue whether Texas or maritime law should govern. Under the sales agreement, Texas law controls. Under the charter party the maritime law of the United States controls or, if maritime law is inapplicable, Texas law. The letter agreement is silent about controlling law. Maritime law, therefore, governs those claims arising from the charter party – Tetra's claims for declaratory judgment and breach of insurance. While the letter agreement is not explicit on governing law, it recites that it was made under the charter party. Maritime law also governs claims arising from it.

    A.    *Vessels.*

The charter party says that Tetra must hire "primary vessels and substitute vessels of similar size and capability" from Henry. The key lies in "substitute." Substitution occurs when what is specified is not available. Tetra would read substitute to mean *replacement* boats. Henry reads substitute to mean *all* boats.

An ambiguity in a contract only exists when a reasonable, fully-informed, disinterested person would be confused by the words used. This confusion occurs when the words in the contract are susceptible of more than one reasonable meaning.

According to the charter party, Tetra was allowed to request the availability and delivery information for specific boats. When it needed a boat, Tetra was to contact Henry about using a specific boat from the fourteen boats listed in the charter party as primary vessels. If that boat was not available, Henry was to offer a substitute. Tetra was not obliged to charter from Henry if an acceptable substitute was unavailable.

---

[3]     *See* RESTATEMENT (SECOND) OF CONTRACTS § 202 (1981).

The words are susceptible of only one meaning. At no point did Tetra commit to chartering all boats from Henry.

Henry asserts that Tetra expanded the terms of the charter after the sale by hiring non-substitute, dissimilar boats under terms similar to the charter agreement. Later, independent transactions neither modify the contract nor illustrate its meaning.[4]

Henry wants to use "course of performance" as an aid to interpretation. Courts do not have to interpret contracts that are without confusion. Assuming that post-contract behavior should be considered, the practice of the parties is a suitable tool for supplying precision to terms with operating flexibility. This is useful for interpreting a term that is inherently imprecise, like *reasonable* or *prompt*. This deal had pages of precision, and the ambiguity that Henry finds is that *substitute* means *all*. That meaning is not discoverable no matter how one defines "bargain-in-fact." A few parallel transactions do not convert a limited commitment into a requirements contract.

The bargain here included a reciprocity: Henry agrees to buy fourteen if Tetra agrees to charter them from Henry for five years. The charter commitment was circumscribed by the sales agreement. The charter of none of the supplemental boats was supported by a purchase from Tetra. The reciprocal factor is wholly missing in the chartering of the extra boats, making them distinct rather than illustrative.

Further, a party's interpretation is considered only when a contract is ambiguous.[5] As the charter party is unambiguous, Tetra's actions cannot alter the plain meaning of the contract's terms.

B.   *Insurance.*

The contract required Henry to keep casualty, personal injury, and liability insurance on the vessels and their crews. These coverages were significant to Tetra, and – as a matter of simple arithmetic – their costs would have been included in the price of the charter that Tetra paid. Tetra was paying for the insurance just as it was paying

---

[4]   *See Abram & Tracy, Inc. v. Smith*, 623 N.E.2d 704, 709 (Ohio Ct. App. 1993); *cf Mid-South Packers, Inc. v. Shoney's Inc.*, 761 F.2d 1117, 1121 (5th Cir. 1985).

[5]   *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 839 (5th Cir. 2004); *cf Mencke v. A Cargo of Java Sugar*, 187 U.S. 248, 257 (1902).

Henry for the cost of the vessels, fuel, and crew.

Insuring the vessels was material. It was breached without justification by Henry. As a direct consequence, all of Tetra's obligations under the contract ceased on April 8, 2004, when the insurance was cancelled. Henry has offered no countervailing evidence or argument.

### C. *Indemnification.*

Henry agreed to defend and indemnify Tetra in lawsuits by three seamen as partial consideration for the sale. Tetra would not have sold Henry the boats without this agreement. Tetra settled those suits with its own funds. Henry received money from its insurer for those costs but kept the money. That money is owed to Tetra. Henry will pay $113,000 it received from its insurer for Tetra's settlement and legal fees for those lawsuits. It has judicially admitted that this is its responsibility.

### D. *Liens.*

At trial, Tetra showed that it chartered boats from Diamond B through Henry. Tetra paid Henry, and it was to pay Diamond B. Henry did not, and Tetra is entitled to recover the $55,000 that it paid to exonerate the liens filed by Diamond B on offshore rigs and various vessels. Henry owes this to Tetra.

### E. *Attorney's Fees.*

Tetra has requested attorney's fees allowed by Texas law on its breach of contract claims.[6] Maritime law does not allow for the recovery of fees absent extraordinary circumstances. Henry breached the contract by not providing insurance and by failing to indemnify Tetra on the seamen's suits. As these claims arose under the charter party, they are governed by maritime law. Consequently, Tetra cannot recover its fees.

The Constitution confides jurisdiction of maritime cases to the national courts. This choice was made to protect our legal relations in water-borne trade from a

---

[6] TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (Vernon 1986).

multiplicity of rules. The maritime clause parallels and reinforces the interstate and foreign commerce clause. Uniformity and dependability are essential to trade, and maritime trade was critical to America in 1789 – all thirteen of the original states had direct maritime access. Today, trade on our inland waters totals more than one billion dollars and our foreign maritime trade is over one and one-quarter billion dollars.[7] A barge's passage from Saint Paul to Baton Rouge on the Mississippi transits ten states. Foreign trading partners and the high sea are an even greater potential complication.

In addition to the Founders' practical understanding of trade, foreign trade is international law. In that field, the nation needs to speak for itself alone, even in simple matters like attorneys' fees.

Maritime law does not permit the recovery of attorneys' fees. Grafting state law exceptions into federal-international maritime law offends the supremacy clause as well as defeats the legitimate public interest in unfettered trade. Tetra may not be awarded attorneys' fees because Henry breached the maritime portions of the contract.

4.   *Henry's Counterclaims.*

Two years after the original complaint, Henry answered and counterclaimed. During these years Henry was ordered to produce documents that would show Tetra failed to charter the specified boats or their substitutes. Henry failed to comply with that order. It never specified the vessels Tetra failed to charter under the charter party. That Henry entered bankruptcy eight months after that order is no excuse. This conduct is dilatory, and the court would be within its discretion to dismiss the counterclaims.[8]

Confirming that the counterclaim are sand in the gears, at trial Henry offered no data, document, or witness – no evidence – to support its claims. All of Henry's claims fail as a matter of law and fact.

Henry's deficiencies in prosecuting the action aside, its claims fail on their face.

---

[7]   UNITED STATES DEPARTMENT OF COMMERCE, STATISTICAL ABSTRACT OF THE UNITED STATES: 2006 702 tbl. 1064 (2006).

[8]   FED. R. CIV. P. 41(b).

### A.     *Breach of Contract.*

Henry asserts that Tetra breached both the charter party and the sales agreement by failing to charter all boats from Henry. Henry's claim is the converse of Tetra's declaratory judgment action to define its obligations. The charter party was not a requirements contract. Henry failed both before and at trial to substantiate its claims that Tetra failed to charter the boats as it had agreed.

### B.     *Fraud and Inducement.*

Henry's fraud and fraud in the inducement claims fail as well. Henry argues that Tetra representatives made false statements on which Henry relied when it bought the boats. The sales agreement says that the whole of the agreement between Tetra and Henry is embodied in the written document. It further says that both parties were represented by legal and financial advisors and that both relied on the advice of their own advisors. The claims for fraud and fraud in the inducement are doomed by these contract clauses.

Henry would make much of the fact that these clauses are only in the sales agreement and not the charter party. Since both documents are part of the same contract, Henry is bound by these clauses wherever they appear.

Without those rather silly clauses, Henry has no fraud case. When a company has entered three documents for the sale of a fleet of work boats, an obligation to charter, and an indemnity in existing lawsuits – with a value in the millions of dollars – the law of contracts does not allow it gratuitously to assert later that some part of the negotiations or casual conversations before the contract were the really significant part to it.

Henry says that Tetra's misrepresentations were that it interpreted the clause on its obligation to charter differently from Henry. Contract interpretation is not a present, material fact at the inducement, so this datum cannot support a finding of fraud.[9] Later confusion and conflict are not the elements of fraud. The claim of fraud has never had a single shard of evidence in its support; its only tie to fraud is that it itself is dishonest pleading.

---

[9]     *See Fina Supply, Inc., v. Abilene Nat'l Bank*, 726 S.W.2d 537, 540 (Tex. 1987).

C.  *Deceptive Trade.*

Henry alleges that both Texas and Louisiana's deceptive trade practices acts were violated by the same acts complained of in the breach of contract and fraud claims. The contract documents say that either Texas or maritime law governs. The charter party says that if maritime law does not apply, Texas law does. Louisiana was not one of their choices. Henry cannot have a claim under Louisiana law.

The Texas act allows for civil actions for false, misleading, or deceptive acts enumerated in the act as well as for breach of warranty or unconscionable conduct. Because Henry offered no evidence at trial to support a finding that Tetra engaged in prohibited conduct, its claim fails. The whole record supports the finding that Tetra did as it was obliged and did more, while curing Henry's defaults.

5. *Conclusion.*

Tetra did not have to charter all its boats from Henry. Henry breached the contract by failing to maintain insurance, fully pay third-party charter fees, and reimburse Tetra for the legal fees and settlement costs of the seamen's suits. Tetra did not breach the contract, defraud Henry, or engage in unfair trade practices.

Tetra will recover $167,911.26 from Henry.

Signed on April 27, 2007, at Houston, Texas.

Lynn N. Hughes
United States District Judge